THEODORE WATERS, Indiv. and d/b/a Electro Con, Inc., Plaintiffs-Appellants, v. ARNOLD REINGOLD, Defendant-Appellee.

First District (5th Division)   No. 1—93—3600

Opinion filed March 22, 1996.

648

Gleason & Fritzshall, of Chicago (Rick A. Gleason and Jeffrey W. Anderson, of counsel), for appellant.

Martin D. Tasch, of Barnett, Bornstein & Blazer, Ltd., of Chicago, for appellee.

JUSTICE GORDON delivered the opinion of the court:

Plaintiffs, Theodore Waters and Electro Con, Inc., appeal from the trial court's grant of summary judgment to the defendant relative to plaintiffs' sixth amended complaint alleging accountant malpractice and negligence and from the trial court's dismissal with prejudice of plaintiffs' seventh amended complaint alleging breach of contract. On appeal, the plaintiffs argue that the summary judgment and the involuntary dismissal were erroneous. Before we can reach the merits of plaintiffs' appeal, however, we must first address the issue of jurisdiction, raised by defendant in a motion taken with the case, to review the summary judgment order.

Plaintiffs' sixth amended complaint contained two counts.[1] The first count alleged accountant malpractice by defendant Reingold based upon defendant's negligent handling of certain tax matters for the plaintiffs. The second count presented a separate cause of action for attorney negligence by the law firm hired by plaintiffs to prepare certain trust documents relative to a stock transfer. That latter count was dismissed pursuant to settlement on January 21, 1993, and is not involved in the instant appeal.

Plaintiffs' sixth amended complaint was the subject of two summary judgment motions.[2] The first motion, filed by the defendant attorneys and subsequently joined by defendant Reingold, included an attack based on the statute of limitations. The judge at the time, Judge Martin Ashman, specifically rejected the statute of limitations argument and denied the motion in its entirety in two orders dated December 2 and 10, 1992. On December 21, 1992, defendant Reingold filed a second motion for summary judgment, arguing that plaintiffs' accountant malpractice action was barred by the *Moorman* doctrine, which prohibits recovery of economic damages in tort. See *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 435 N.E.2d 443

---

[1]Plaintiff's prior complaints were dismissed for failure to state a cause of action or to allege facts to avoid application of the statute of limitations.

[2]A third summary judgment motion filed by defendant Reingold arguing plaintiffs' inability to prove damages was withdrawn.

(1982). That motion was granted on January 25, 1993. At that time, the court denied plaintiffs' request to include in the summary judgment order leave to file a seventh amended complaint to add a breach of contract action but told the plaintiffs to file a written motion for leave to file an amended complaint, with the complaint attached, during the next 30 days. The court included in the summary judgment order a finding that there was no just reason to delay enforcement or appeal.

On February 19, 1993, the plaintiffs filed a motion to reconsider the January 23, 1993, order and a motion for leave to file *instanter* their seventh amended complaint. This complaint alleged breach of contract by defendant Reingold based on the same conduct alleged in the sixth amended complaint sounding in tort. On May 10, 1993, at the hearing on these motions, the plaintiffs also orally moved for Supreme Court Rule 308 certification (134 Ill. 2d R. 308) of the question of whether the *Moorman* doctrine should be applied to accountant malpractice. At the conclusion of that hearing, the court denied plaintiffs' motion to reconsider, granted leave to file the seventh amended complaint, and ordered plaintiffs to submit a written motion for Rule 308 certification. There was no appealability language in the May 10, 1993, order. On May 17, 1993, the plaintiffs filed their Rule 308 motion.

The defendant subsequently moved to dismiss plaintiffs' seventh amended complaint with prejudice because that complaint failed to state a contract cause of action (735 ILCS 5/2—615 (West 1992)) and because the complaint was barred by the statute of limitations.[3] On September 24, 1993, the court dismissed plaintiffs' seventh amended complaint with prejudice, finding insufficient factual allegations of late discovery and fraudulent concealment to defeat the operation of the statute of limitations as well as insufficient allegations of the elements for breach of contract. On that date, the court also denied plaintiffs' Rule 308 certification as being moot and found that there was no just reason to delay enforcement or appeal. The plaintiffs did not seek leave to file any further amended pleadings and on October 8, 1993, filed their notice of appeal seeking review of the trial court order entered on September 24, 1993, dismissing plaintiffs' seventh amended complaint; the order on January 25, 1993, granting summary judgment to the defendant; and the order denying plaintiffs' motion to reconsider the January 25, 1993, order.

---

[3]Although captioned as a section 2—615, defendant's motion was actually a combination motion to dismiss pursuant to section 2—615 and for involuntary dismissal pursuant to section 2—619 of the Code of Civil Procedure. 735 ILCS 5/2—615, 5/2—619 (West 1992).

■ The filing of a timely notice of appeal is both jurisdictional and mandatory. *Reyes v. Compass Health Care Plans*, 252 Ill. App. 3d 1072, 625 N.E.2d 246 (1993). Supreme Court Rule 303(a)(1) provides that the notice must be filed within 30 days after final judgment has been entered or, if a timely post-trial motion directed at the judgment is filed, within 30 days after entry of the order disposing of the last pending post-trial motion. 134 Ill. 2d R. 303(a)(1). For purposes of Supreme Court Rule 303, an order or judgment is final if it terminates the litigation between the parties on the merits of the cause or disposes of the rights of the parties either upon the entire controversy or upon some definite part thereof. *E.g., F.H. Prince & Co. v. Towers Financial Corp.*, 266 Ill. App. 3d 977, 640 N.E.2d 1313 (1994); *Mars v. Priester*, 205 Ill. App. 3d 1060, 563 N.E.2d 977 (1990). If the judgment or order does not dispose of all matters, an appeal may not be taken unless the trial court has made an express written finding that there is no just reason for delaying enforcement or appeal. *Marsh v. Evangelical Covenant Church*, 138 Ill. 2d 458, 563 N.E.2d 459 (1990). Absent such language, the order is not final and is subject to revision at any time before entry of the judgment adjudicating all claims, rights and liabilities of all the parties. 134 Ill. 2d R. 304(a).

Here, the summary judgment order of January 25, 1993, included Rule 304(a) language that there was no just reason to delay enforcement or appeal. The plaintiffs' post-trial motion directed at that judgment was denied on May 10, 1993. The plaintiffs' notice of appeal from that judgment was not filed until October 8, 1993, after plaintiffs' seventh amended complaint was dismissed. The defendant argues that plaintiffs' notice of appeal was untimely as to the summary judgment order because it was not filed within 30 days of May 10, 1993, the date the court denied plaintiffs' post-trial motion directed at the summary judgment order.

Initially we note that the Rule 304(a) finding included in the summary judgment order of January 25, 1993, was unnecessary because there was only one claim pending, plaintiffs' count I alleging accountant malpractice. Count II, which alleged legal malpractice against other defendants, had been dismissed previously pursuant to a negotiated settlement. The summary judgment order, which terminated count I, was final in and of itself because it terminated the litigation on the merits of the cause and disposed of the rights of the remaining parties upon the entire controversy. See *F.H. Prince & Co. v. Towers Financial Corp.*, 266 Ill. App. 3d 977, 640 N.E.2d 1313; *Mars v. Priester*, 205 Ill. App. 3d 1060, 563 N.E.2d 977. Thus, that order was appealable as a final order pursuant to Supreme Court Rule 301. 134 Ill. 2d R. 301. However, that order became nonfinal on Feb-

ruary 19, 1993, when the plaintiffs filed a written motion for leave to file their seventh amended complaint *instanter*, which was granted on May 10, 1993, thereby creating an additional claim sounding in contract[4] (see *Marsh v. Evangelical Covenant Church*, 138 Ill. 2d at 465, 563 N.E.2d at 463 (a claim for purposes of Rule 304(a) is defined as "any right, liability or matter raised in an action")). See *F.H. Prince & Co. v. Towers Financial Corp.*, 266 Ill. App. 3d 977, 640 N.E.2d 1313 (the filing of a claim while the trial court has jurisdiction makes any judgment final when entered nonfinal); see also *In re Marriage of Tomei*, 253 Ill. App. 3d 663, 624 N.E.2d 884 (1993) (notice of appeal directed at dissolution judgment premature where petition for fees claim subsequently filed).

The issue thus becomes whether a Rule 304(a) finding, superfluous when made, can be activated at a later point in time to create appealability upon the subsequent filing of an additional claim.[5] There appears to be some tacit support for an affirmative response to this query in the context of motions for sanctions filed after entry of judg-

---

[4]None of the parties raised any issue as to whether plaintiffs' seventh amended complaint sounding in contract superseded plaintiffs' sixth amended complaint sounding in tort and operated as an abandonment of the sixth amended complaint. See *Roy v. Coyne*, 259 Ill. App. 3d 269, 287, 630 N.E.2d 1024, 1036 (1994), quoting *Bowman v. County of Lake*, 29 Ill. 2d 268, 272, 193 N.E.2d 833, 835 (1963). Instead, both parties in their written and oral argument before this court addressed the appeal from the sixth amended complaint only on its merits under the economic loss doctrine of *Moorman* and in terms of the timeliness of the appeal under Supreme Court Rule 304(a). Accordingly, pursuant to Supreme Court Rule 341(e) (134 Ill. 2d R. 341(e)), which treats as waived any points the parties fail to raise in their briefs, the seventh amended complaint will be considered herein merely as an additional claim rather than as a superseding claim. See *Willis v. Ohio Casualty Co.*, 101 Ill. App. 3d 1099, 428 N.E.2d 1061 (1981).

[5]Although not raised by the parties, we note that where the judgment order contains a Rule 304(a) finding, the mere filing of a post-trial motion against that judgment will not invalidate that prior Rule 304(a) finding or necessitate a second Rule 304(a) finding in the order disposing of the post-trial motion. See *Mostardi-Platt Associates, Inc. v. American Toxic Disposal, Inc.*, 182 Ill. App. 3d 17, 537 N.E.2d 922 (1989) (Rule 304(a) finding in final judgment but not in post-trial motion order). Pursuant to Rule 303(a)(1) (134 Ill. 2d R. 303(a)(1)), applicable to Rule 304(a)(1) appeals (134 Ill. 2d R. 304(a)), the filing of the post-judgment motion merely tolls the running of the 30-day time period within which the notice of appeal must be filed until entry of the order disposing of the last pending post-trial motion. See Ill. Ann. Stat., ch. 110A, par. 304(a), Committee Comments (Revised September 1988) (Smith-Hurd 1985, 1992 Supp.):

ment in the underlying action. In *Marsh v. Evangelical Covenant Church*, the plaintiff filed a notice of appeal on August 25, 1988, 28 days after the trial court denied plaintiff's request for injunctive relief. Also on August 25, 1988, the defendant filed a motion for sanctions. The court held that the notice of appeal was premature because it was filed before the court disposed of the motion for sanctions. Notwithstanding its holding, the court suggested that a different result would have been reached had there been a Rule 304(a) finding when the order denying the injunctive relief was entered. See *Marsh*, 138 Ill. 2d at 468, 563 N.E.2d at 464-65 ("no appeal may be taken from an otherwise final judgment entered on a claim when a [motion for sanctions] claim remains to be resolved, absent a finding pursuant to Rule 304(a) that there is no just reason to delay enforcement or appeal"). See also Second District Appellate Court decisions of *Gaynor v. Walsh*, 219 Ill. App. 3d 996, 579 N.E.2d 1223 (1991); *Cashmore v. Builders Square, Inc.*, 207 Ill. App. 3d 267, 565 N.E.2d 703 (1990).

In *American National Bank & Trust Co. v. Bus*, 212 Ill. App. 3d 133, 569 N.E.2d 1377 (1991), a Second District Appellate Court decision, a Rule 304(a) finding was included in a summary judgment order that was final and appealable when entered without the Rule 304(a) finding but that became nonfinal later when the defendant filed a motion for sanctions. The issue in that case was whether the trial court retained jurisdiction to hear the motion for sanctions once the notice of appeal was filed in the underlying action. The court found that, while the appellate court had jurisdiction to hear the plaintiff's appeal from the summary judgment order, the trial court retained jurisdiction to hear the motion for sanctions as that motion presented a claim entirely distinct from the summary judgment order. Although not discussed in the opinion, the court's recognition of appellate jurisdiction in the earlier appeal from the summary judgment order suggests that Rule 304(a) language, unnecessary when made, can become effective and create appealability at a later time.

The effect of an unnecessary Rule 304(a) finding in an otherwise final judgment was expressly reached by the First District Appellate Court in *Pines v. Pines*, 262 Ill. App. 3d 923, 635 N.E.2d 986 (1994). In *Pines*, the plaintiff filed a notice of appeal on March 19, 1993, from

---

"Rule 304(a) was amended in 1988 to cure the defect that compelled the Supreme Court, in *Elg v. Whittington* (1987), 119 Ill. 2d 344, to hold that the filing of post-trial motions in the trial court do not toll the time for filing a notice of appeal under Rule 304, as it does under Rule 303. *** It should be noted that the filing of post-trial motions in cases appealed under Rule 304 will have the same effect as spelled out in Rule 303."

the trial court's order dated February 26, 1993, that dismissed plaintiff's action with prejudice and denied plaintiff's motion for voluntary dismissal. The dismissal order included a Rule 304(a) finding. On March 29, 1993, the defendants filed a motion for sanctions. The trial court dismissed defendants' motion for sanctions finding it lacked jurisdiction; and the defendants filed a separate appeal from that dismissal. On a date, not disclosed in the opinion, the plaintiff dismissed his appeal from the underlying judgment of February 26, 1993, and sought review of that underlying judgment in a cross-appeal.

Before reaching the merits of plaintiff's cross-appeal that sought review of the February 26, 1993, dismissal order, the appellate court *sua sponte* raised the issue of its jurisdiction to hear that cross-appeal since the original appeal from that dismissal order had been dismissed and since the cross-appeal was from an order that included a Rule 304(a) finding made more than 30 days before the date the notice of cross-appeal was filed. In determining it had jurisdiction, the court found the Rule 304(a) language in the order dismissing plaintiff's complaint unnecessary because at the time it was entered the dismissal order was appealable under Supreme Court Rule 301 as a final judgment having no other parties or claims pending. The court also rejected the notion that the Rule 304(a) finding, superfluous when made, became effective once the motion for sanctions was filed so that the time for filing the notice of appeal had expired. Finding that *Marsh* did not require that a Rule 304(a) finding be made in the otherwise final judgment in anticipation that a motion for sanctions may be timely filed subsequently, the court suggested that the Rule 304(a) finding could be made after the otherwise final judgment order is entered and after the motion for sanctions is filed. The court concluded:

> "In this case, therefore, the Rule 304(a) finding included in the order dismissing the case with prejudice had no effect because it did not leave any parties or claims pending and the finding was not subsequently activated when the defendants timely filed a motion for sanctions. When the defendants filed their motion, it tolled the time for the plaintiff to appeal from the dismissal order and the dismissal of the plaintiff's notice of appeal from that order was proper. This court has jurisdiction to consider the plaintiff's cross-appeal." 262 Ill. App. 3d at 929, 635 N.E.2d at 990.

The defendant in the case at bar cites this court to the case of *Reyes v. Compass Health Care Plans*, 252 Ill. App. 3d 1072, 625 N.E.2d 246 (1993), another first district decision. In that case, a summary judgment order was entered on December 27, 1991. That order also

contained unnecessary Rule 304(a) language since it was final and appealable pursuant to Rule 301. The plaintiff's post-trial motion to reconsider and for leave to amend the complaint was denied in a subsequent order dated February 24, 1992, which also contained Rule 304(a) language. On the day that latter order was entered, the defendant filed a motion for sanctions. That motion was granted on May 8, 1992. On May 28, 1992, the plaintiff appealed from the December 27, 1991, summary judgment order; the February 24, 1992, order denying plaintiff's post-trial motion; and the May 8, 1992, order entering sanctions against the plaintiff. The defendant moved to dismiss plaintiff's appeals from the grant of summary judgment and denial of plaintiff's post-trial motion as untimely. The court agreed, finding that the Rule 304(a) language in the February 24, 1992, order denying plaintiff's post-trial motion obligated the plaintiff to file his notice of appeal within 30 days thereafter.

In reaching its decision, the *Reyes* court did not discuss the effect of the premature Rule 304(a) finding in the earlier December 27, 1991, summary judgment order nor did it rely on that finding as a basis for the dismissal of the appeal. The court looked only to the Rule 304(a) finding made in the February 24, 1992, order denying the post-trial motion. That fact makes *Reyes* factually distinguishable from *Pines* as well as from the facts in the instant case. Here, as in *Pines*, there was only one Rule 304(a) finding made and that finding was entered before the filing of the claim that defeated the independent finality of the original judgment. Thus, the Rule 304(a) finding was unnecessary and ineffectual at the time it was made. In *Reyes*, however, although the court included an unnecessary Rule 304(a) finding in the summary judgment order of December 27, 1991, it made another Rule 304(a) finding in the denial of the post-trial motion on the day the sanctions claim was filed (February 24, 1992). It was the latter Rule 304(a) finding that the appellate court relied upon to create appealability.

The need to make a Rule 304(a) finding *after* the additional claim is filed is even more critical in the instant case than in any of the previously cited cases. In those cases, the subsequent claim involved a motion for sanctions which, as recognized in *Marsh* and its progeny, presented an issue entirely distinct from the judgment previously entered and would not affect in any way the outcome of the underlying action. See *Marsh*, 138 Ill. 2d at 462, 563 N.E.2d at 462; *American National Bank & Trust Co.*, 212 Ill. App. 3d at 136-37, 569 N.E.2d at 1380, citing *Chicago Title & Trust Co. v. Czubak*, 67 Ill. App. 3d at 185, 384 N.E.2d at 766. In the instant case, however, the subsequent claim did not present a claim that was entirely distinct

from the claim disposed of by summary judgment. Although the claim presented in the seventh amended complaint was premised on a different theory of law, contract as opposed to tort, that claim was raised as an alternative basis for recovery and alleged nearly identical acts of conduct and omissions by the defendant.

One may argue on the record before us that the trial court was aware of the plaintiffs' intention to file a breach of contract action and that the court considered that fact when it included the Rule 304(a) finding in the summary judgment order. However, there is nothing in the body of the Rule 304(a) finding that would make it viable because of the mere anticipation of the future filing of a second claim. Moreover, the court's actions after the seventh amended complaint was filed do not imply that the court considered itself bound by its prior Rule 304(a) finding, since such a finding would have taken jurisdiction over the sixth amended complaint away from the trial court. As noted above, on the day the court denied plaintiffs' posttrial motion and granted plaintiffs leave to file their seventh amended complaint, the court ordered the plaintiffs to submit their oral motion for Rule 308 certification in writing. (That motion sought to certify the question of whether the *Moorman* doctrine should be applied to accountant malpractice.) The court would not have issued such an order if it intended that its prior Rule 304(a) finding continue to have the effect of finality and appealability.

■ Even if we were to hold that a Rule 304(a) certification although superfluous when entered can create appealability when a second claim is subsequently joined, it could not have that effect in the instant case. In fact, any Rule 304(a) certification, whether made before or after the filing of the seventh amended complaint, would have been inappropriate and an abuse of discretion. The history of Supreme Court Rule 304(a) and related predecessor provisions suggests adoption of the federal policy governing interlocutory appeals under Rule 54(b) of the Federal Rules of Civil Procedure (28 Fed. R. Civ. P. 54(b)), the counterpart to Supreme Court Rule 304(a). In accordance with that policy, piecemeal appeals involving fewer than all of the parties or claims are to be discouraged. *Marsh v. Evangelical Covenant Church*, 138 Ill. 2d 458, 563 N.E.2d 459; see Ill. Ann. Stat., ch. 110A, par. 304(a), Historical & Practice Notes, at 159 (Smith-Hurd 1985). Thus, while a judgment may be final in the sense that it has disposed of a cognizable claim, that judgment is not appealable absent a finding by the trial judge that there is no just reason to delay enforcement and appeal. Under federal practice, the determination of appealability, which is discretionary with the trial court, requires the weighing of several factors, which include:

"(1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like." *Allis-Chalmers Corp. v. Philadelphia Electric Co.*, 521 F.2d 360, 364 (3d Cir. 1975).

When weighing these factors, the trial court must balance the federal policy of preventing piecemeal appeals against the hardship or injustice that might be inflicted on the litigant because of delay. *McKibben v. Chubb*, 840 F.2d 1525 (10th Cir. 1988). Applying these guidelines, several federal courts have found it to be an abuse of discretion for trial courts to certify appeals where the adjudicated and pending claims were closely related and stemmed from essentially the same factual allegations. See *Geier v. Hamer Enterprises, Inc.*, 226 Ill. App. 3d 372, 383-84, 589 N.E.2d 711, 718-19 (1992) (for detailed listing of federal cases). As noted in *Jack Walters & Sons Corp. v. Morton Building, Inc.*, 737 F.2d 698, 702 (7th Cir. 1984), "if there is a great deal of factual overlap between the decided and the retained claims, they are not separate, and appeal must be deferred till the latter are resolved."

■ Similarly, our determination of the propriety of a finding of appealability and no just reason for delay in the instant case requires us to ascertain whether the claim presented in plaintiffs' sixth amended complaint is severable from the claim presented in plaintiffs' seventh amended complaint, both in terms of the factual and legal issues involved (*Geier v. Hamer Enterprises, Inc.*, 226 Ill. App. 3d at 385, 589 N.E.2d at 719), such that the appellate court would not have to relearn the facts of the case on successive appeals (*Jack Walters & Sons Corp. v. Morton Building, Inc.*, 737 F.2d at 702). Our review of the claims leads us to conclude that, while the complaints allege different theories for recovery, they present alternative bases for recovery based upon nearly identical allegations of fact, namely, the acts of omission and commission by the defendant. The factual overlap is so substantial that, were successive appeals filed, the court would be required to hear the same factual evidence twice. This potential duplication and the absence of any alleged hardship or injustice due to delay requires that the appeal regarding the first claim be deferred until the latter claim is resolved. Thus,

any Rule 304(a) certification, even if premised upon a consideration of the existence of the additional claim encompassed in the seventh amended complaint, would be an abuse of discretion. Therefore, for all of the reasons discussed above, the summary judgment order did not become final and appealable until the seventh amended complaint was dismissed with prejudice, thereby terminating all claims between the parties; and we have jurisdiction to review all matters raised in this appeal, including the trial court's orders regarding the entry of summary judgment on plaintiffs' sixth amended complaint.

Returning to the issues raised in this appeal, plaintiffs' sixth amended complaint, as well as plaintiffs' seventh amended complaint, alleged that the defendant, an accountant, was retained and employed by the plaintiffs to prepare plaintiffs' state and federal income tax returns, to advise and handle plaintiffs' financial matters, and to represent the plaintiffs before the Internal Revenue Service (IRS). The complaints alleged that the defendant did not exercise the degree of skill or care ordinarily possessed by accountants (sixth amended complaint) or breached the employment agreement and contract (seventh amended complaint) by (a) failing "to file the Plaintiff's sub S Corporation Election Termination with his state and federal income tax returns filed for the year 1979" and (b) failing to represent the plaintiffs at various enumerated audits conducted by the Internal Revenue Service in 1981 and 1982. As a result of these "negligent acts" or "contractual breaches," the plaintiffs alleged injuries including the assessment of substantial penalties by the IRS and the resultant destruction of plaintiff Waters' credit rating, seizure of possessions by the IRS, disruption of business and lost earnings, and public shame and ridicule.

As also noted above, summary judgment was entered in favor of the defendant on plaintiffs' sixth amended complaint because of the economic loss doctrine recognized in *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 435 N.E.2d 443 (1982). In accordance with that doctrine, economic damages are not recoverable in tort and are recoverable, if at all, in contract. While the instant case was pending on appeal, however, our supreme court held, in *Congregation of the Passion v. Touche Ross & Co.*, 159 Ill. 2d 137, 636 N.E.2d 503 (1994), that the economic loss doctrine does not bar recovery in tort for accountant malpractice. The court held that, as with attorney malpractice, an accountant malpractice complaint may be couched in either contract or tort law because the "duty to observe reasonable professional competence exists independently of any contract." 159 Ill. 2d at 164, 636 N.E.2d at 515. Thus, in accordance with *Congregation of the Passion*, summary judgment granted in the

instant accountant malpractice action on the basis of *Moorman* and the economic loss doctrine must be reversed.[6]

With respect to the seventh amended complaint, plaintiffs argue that the elements of a breach of contract action were sufficiently pled. In the alternative, the plaintiffs argue that their complaint should not have been dismissed with prejudice and that they should have been given the opportunity to amend.

The trial court dismissed the seventh amended complaint for failure to state a cause of action as well as for failure to allege sufficient facts in support of late discovery or fraudulent concealment so as to prevent the operation of the five-year statute of limitations (735 ILCS 5/13—205, 5/13—215 (West 1992)).[7] Plaintiffs' original complaint was filed on July 21, 1987, while the alleged wrongs occurred during the preparation of 1979 tax returns and during the period of July 1981 through February 10, 1982, when the IRS audits were conducted. The plaintiffs' seventh amended complaint alleged that the breach of contract was not discovered until about May 2, 1986, "when the Internal Revenue Service issued its decision that the Plaintiff was not negligent with regard to the preparation and filing of the aforementioned income tax returns." The plaintiffs further alleged:

> "That on and before May 2, 1986, the Defendant fraudulently concealed from the Plaintiff any potential breach of contract on the part of the Defendant by representing that the Plaintiff's sub S Corporation Election could be terminated for 1979 by the preparation of a trust and the transfer of stock of Electro Con, Inc., to said trust after 1979; by representing that his presence was not necessary, and his absence not harmful, at the audits conducted by the IRS as hereinafter alleged; by representing that the Plaintiff's payroll and income tax returns were properly prepared and filed by the Defendant, when they were not so done, as hereinafter alleged; and by representing to the Plaintiff that the Plaintiff was negligent during the aforesaid IRS audits, and in the preparation of his returns, when Defendant knew the same not to be true."

■ In accordance with section 13—205 of the Code of Civil Procedure (the Code) (735 ILCS 5/13—205 (West 1992)), actions on unwritten contracts must be commenced within five years after the cause of

---

[6]See footnote 4 *supra.*

[7]Although defendant's motion to dismiss was brought pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)), that motion also sought dismissal based on the statute of limitations and thus should have been brought pursuant to section 2—619(a)(5) of the Code (735 ILCS 5/2—619(a)(5) (West 1992)) as well.

action accrued. A cause of action accrues, and the statute of limitations begins to run, when the person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused. *E.g., Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 633 N.E.2d 627 (1994); *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 430 N.E.2d 976 (1981); *Gilbert Bros., Inc. v. Gilbert*, 258 Ill. App. 3d 395, 630 N.E.2d 189 (1994); *Garcia v. Pinto*, 258 Ill. App. 3d 22, 629 N.E.2d 103 (1993); *Tucek v. Grant*, 129 Ill. App. 3d 236, 472 N.E.2d 563 (1984). At that point, under the discovery rule, the burden is upon the injured person to make diligent inquiry concerning the existence of a cause of action and the limitations period commences. *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 430 N.E.2d 976; *Witherell v. Weimer*, 85 Ill. 2d 146, 421 N.E.2d 869 (1981).

■ Alternatively, if the person liable to the action fraudulently conceals the action, thereby preventing the injured person from discovering the action, the statute of limitations does not begin to run until the person entitled to bring the action discovers that he has such an action. 735 ILCS 5/13—215 (West 1992); *Harvey v. Harris Trust & Savings Bank*, 73 Ill. App. 3d 280, 391 N.E.2d 461 (1979). A party seeking to avail himself of the fraudulent concealment provision to postpone commencement of the statute of limitations must allege facts of affirmative acts or misrepresentations by the defendant that were designed to prevent and in fact did prevent the discovery of the claim. *Hagney v. Lopeman*, 147 Ill. 2d 458, 590 N.E.2d 466 (1992); *Chicago Park District v. Kenroy, Inc.*, 78 Ill. 2d 555, 402 N.E.2d 181 (1980); *Bush v. Continental Casualty Co.*, 116 Ill. App. 2d 94, 253 N.E.2d 619 (1969) (construing predecessor statute, Ill. Rev. Stat. 1959, ch. 83, par. 23). The concealment may also consist of some trick or contrivance or other affirmative action intended to exclude suspicion, prevent inquiry or induce plaintiff to delay filing the claim. *Foster v. Plaut*, 252 Ill. App. 3d 692, 625 N.E.2d 198 (1993); *Nogle v. Nogle*, 53 Ill. App. 2d 457, 464, 202 N.E.2d 683, 687 (1964). Fraudulent misrepresentations which form the basis of the underlying cause of action do not constitute fraudulent concealment under section 13—215 in the absence of a showing that the misrepresentations also tended to conceal the cause of action. *Foster v. Plaut*, 252 Ill. App. 3d 692, 625 N.E.2d 198.

■ We would agree with the trial court that plaintiffs' seventh amended complaint did not set forth sufficient factual allegations of fraudulent concealment. A close perusal of those allegations shows that the alleged acts by the defendant were not acts of concealment but, instead, acts of wrongdoing that formed the basis of the underlying action. The plaintiffs alleged, for example, that the defendant

made representations about termination of the subchapter S corporation election via a stock transfer; that the defendant made representations about the necessity of his presence at various IRS audits; and that the defendant made representations that plaintiffs' payroll and income tax returns were properly prepared. It is the defendant's acts in failing to properly terminate the subchapter S corporation, in failing to attend the IRS audits and in failing to properly prepare the income tax returns that comprise the acts of breach of contract that caused plaintiffs' alleged injuries. It cannot be said that those acts also tended to conceal the breach of contract. See *Foster v. Plaut*, 252 Ill. App. 3d 692, 625 N.E.2d 198. Moreover, none of those acts suggest contrivance or intent by defendant to exclude suspicion, prevent inquiry or induce plaintiffs to delay filing their claim. The only allegation that would come close to having such an effect was plaintiffs' last allegation that the defendant represented "that the Plaintiff was negligent during the aforesaid IRS audits, and in the preparation of his returns." However, this allegation is stated without any elaboration or detail and, on its face, is not sufficient to show that the plaintiff had a right to rely on representations concerning his personal conduct of which he had personal knowledge. See *Foster v. Plaut*, 252 Ill. App. 3d 692, 625 N.E.2d 198.

We also agree with the trial court's finding that the plaintiffs' seventh amended complaint failed to allege facts of late discovery. As discussed above, a cause of action accrues, and the statute of limitations begins to run, when the person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused. (*E.g., Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 158 Ill. 2d 240, 633 N.E.2d 627; *Gilbert Bros. v. Gilbert*, 258 Ill. App. 3d 395, 630 N.E.2d 189.) Where it appears from the face of the complaint that the plaintiff is filing an action beyond the period for the statute of limitations, the plaintiff must allege facts which indicate that the cause of action was not discovered or would not have been discovered through the exercise of due diligence. (*Moorman Manufacturing Co. v. National Tank Co.*, 92 Ill. App. 3d 136, 414 N.E.2d 1302 (1980), *aff'd in part & rev'd in part*, 91 Ill. 2d 69, 435 N.E.2d 443 (1981); see *Society of Mt. Carmel v. Fox*, 90 Ill. App. 3d 537, 413 N.E.2d 480 (1980) (plaintiff must plead and prove facts of date of discovery). Here, plaintiffs alleged that they did not discover the breach until on or about May 2, 1986, "when the Internal Revenue Service issued its decision that the Plaintiff was not negligent with regard to preparation and filing of the aforementioned income tax returns." This nebulous allegation was not explained nor was any elaboration provided, such that, standing alone, it was not suf-

ficient to meet the discovery rule. Thus, since the plaintiffs' seventh amended complaint failed to allege sufficient facts of late discovery or fraudulent concealment, it was barred by the statute of limitations and the trial court's dismissal of the seventh amended complaint on that basis was correct.

We note that the resultant dismissal of plaintiffs' seventh amended complaint based on the statute of limitations bar has no effect on the viability or our remandment of plaintiffs' sixth amended complaint that contained nearly identical allegations. The legal sufficiency of that complaint was never challenged by a section 2—615 or 2—619 motion in the court below. A statute of limitations issue regarding the sixth amended complaint was raised, however, by the defendant in a motion for summary judgment. Based upon the pleadings and upon extrinsic submissions, the trial judge who was sitting at the time, Judge Ashman, denied that motion and the statute of limitations argument therein. As defendant Reingold did not cross-appeal from that order nor raise that issue in any manner before this court, that ruling with respect to the sixth amended complaint cannot be reevaluated in this appeal.

■ As a final issue,[8] the plaintiffs argue on appeal that they should be allowed to amend their seventh amended complaint to include allegations that would comply with the discovery rule, due to the fact that the seventh amended complaint was plaintiffs' first attempt to allege a breach of contract action. The plaintiffs did not file a post-trial motion seeking reconsideration of the trial court's dismissal with prejudice nor did the plaintiffs seek leave to amend the seventh amended complaint after it had been dismissed by the trial court. See *Gold v. Vasileff*, 160 Ill. App. 3d 125, 513 N.E.2d 446 (1987). The plaintiffs also did not present a proposed amendment in writing that would cure the defects in the seventh amended complaint (see *First Robinson Savings & Loan v. Ledo Construction Co.*, 210 Ill. App. 3d 889, 569 N.E.2d 304 (1991); *Gold v. Vasileff*, 160 Ill. App. 3d 125, 513 N.E.2d 446 ) or that could be reviewed to determine whether justice would be served by allowance of the amendment (see *Trans World Airlines, Inc. v. Martin Automatic, Inc.*, 215 Ill. App. 3d 622, 575 N.E.2d 592 (1991)). Plaintiffs' argument therefore is rejected.

For the foregoing reasons, the summary judgment order entered

---

[8]The affirmance of the trial court's dismissal of the seventh amended complaint on the basis of the statute of limitations bar makes it unnecessary for us to address plaintiffs' argument that the seventh amended complaint sufficiently alleged the elements for a breach of contract action.

on plaintiffs' sixth amended complaint is reversed and remanded, and the dismissal of plaintiffs' seventh amended complaint is affirmed.

Affirmed in part; reversed in part and remanded.

McNULTY, P.J., and HOURIHANE,[9] J., concur.

---

[9]Justice T. O'Brien originally sat on the panel in this appeal. Upon Justice O'Brien's retirement, Justice Hourihane substituted in the decision of this appeal. He has read the briefs and listened to the tape of oral argument.